UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| XAVIER M. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00166-JRS-MJD |
| | ) | |
| RICHARD BROWN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, GRANTING DEFENDANTS' UNOPPOSED MOTION
FOR SUMMARY JUDGMENT, DISMISSING ACTION WITH
PREJUDICE, AND DIRECTING ENTRY OF FINAL JUDGMENT**

The plaintiff and the defendants have moved for summary judgment in this prisoner civil rights action. For the reasons discussed below, the plaintiff's motion must be **denied**, the defendants' motion must be **granted**, and this action must be **dismissed with prejudice**.

**I. Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences

in the non-movant's favor. *See Barbera v. Pearson Education, Inc.*, 906 F.3d 621, 628 (7th Cir. 2018).

When a party moving for summary judgment asserts facts and supports them with admissible evidence, the Court treats those facts as admitted without controversy unless the non-movant specifically controverts them with admissible evidence, shows the movant's assertions are not supported by admissible evidence, or demonstrates that the factual record leaves a material factual dispute. S.D. Ind. L.R. 56-1(f)(1). Conversely, when the non-movant asserts facts and supports them with admissible evidence, the Court treats those facts as admitted without controversy. S.D. Ind. L.R. 56-1(f)(2).

When a motion for summary judgment is unopposed, the Court still views the evidence in the light most favorable to the non-movant. However, by failing to oppose the movant's evidence or assert evidence of his own, the non-movant "[r]educe[s] the pool" from which facts and inferences may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Background and Claims

Mr. Miller is an inmate at Wabash Valley Correctional Facility (WVCF). Mr. Miller's complaint presented allegations on numerous subjects. At screening, the Court found viable Eighth Amendment claims against six members of the WVCF staff based on allegations that Mr. Miller became ill from eating food served on unsanitary trays. *See* dkt. 5. The Court dismissed his remaining claims. *Id.*

Mr. Miller later sought to supplement his complaint with two sets of allegations: The prison staff wrongly confiscated and deprived him of evidence supporting his Eighth Amendment claims, and he was confined under unconstitutional conditions following a disciplinary proceeding. *See* dkts. 21, 21-1. The Court denied Mr. Miller's motion. Dkt. 34 at § I. The deprivation-of-evidence

claims were duplicative of those already proceeding in a separate case, and he did not allege facts that would enable the Court to determine that his conditions-of-confinement claims could be joined properly with his claims regarding his meal trays. *Id.*

Accordingly, the claims upon which the parties seek summary judgment are Eighth Amendment claims pursuant to 42 U.S.C. § 1983 against WVCF Warden Richard Brown, Lieutenant Christopher Nicholson, Mike Ellis, Sergeant Cobb, Sergeant Drada, and Sergeant Bugsby.

### III. Mr. Miller's Motion for Summary Judgment

Mr. Miller's motion for summary judgment does not address the claims pending in this action. Instead, it alleges that members of the prison staff confiscated papers that would support his meal-tray claims in May 2019, before the defendants were issued process in this action and thereby giving them a head start in planning their defense. *See* dkt. 35.

If every allegation in Mr. Miller's motion for summary judgment was proven true, it would not entitle him to relief on his Eighth Amendment claims. Accordingly, Mr. Miller's motion for summary judgment, dkt. [35], is **denied**.

### IV. Defendants' Motion for Summary Judgment

The defendants seek summary judgment on Mr. Miller's Eighth Amendment meal-tray claims. Although Mr. Miller has not responded to the motion for summary judgment, the Court has considered the allegations in his complaint (dkt. 1) and the exhibits he submitted on July 9, 2019 (dkt. 9) in addition to the evidence the defendants tendered in support of their motion, which includes Mr. Miller's deposition transcript. Viewing this evidence in the light most favorable to Mr. Miller, no jury could find that any of the defendants is responsible for a violation of Mr. Miller's Eighth Amendment rights.

**A.     Facts**

In February and March 2019, Mr. Miller became ill on multiple occasions. Dkt. 1 at 4–5. His symptoms included nausea, vomiting, stomach pain, and blood in his stool. *Id.*

These episodes occurred after Mr. Miller ate meals from unsanitary trays. He describes "little chunks" being stuck to the bottoms of his meal trays. Dkt. 48-2 at 10:23–11:4. Mr. Miller is certain that these chunks were not water stains, but he does not know whether they were soap, food, mold, or something altogether different. *See id.* at 32:22–34:7.

Mr. Miller estimates that he became sick from unsanitary trays four times over six weeks beginning in mid-February and ending in late March. *Id.* at 15:21–16:4, 32:15–21. He is not aware of other inmates receiving or becoming ill from dirty meal trays. *Id.* at 25:18–26:12.

Little evidence documents specific incidents or communications with the defendants regarding Mr. Miller's meal trays and resulting illness. He submitted a health care request on February 27, 2019, describing his illness after eating from a "molded tray." Dkt. 9 at 30. No evidence indicates that this request was presented to any of the defendants.

Mr. Miller wrote an informal grievance on March 7, 2019, addressed to "Mike Ellis— Executive Assistant (Food Service)." *Id.* at 31. Mr. Ellis was a legal liaison at WVCF, and his duties included monitoring contract compliance by WVCF's food-service vendor, Aramark. Dkt. 48-2 at 28:9–14; dkt. 48-3 at ¶ 4. The March 7 informal grievance states:

> There is lime build up or mold on these trays, whatever it is, it contains bacteria that could be harmful to consume. We've tried talking to custody staff and they've done nothing about it. I don't know why you allow food to be served on these nasty, bacteria filled trays, but to force us to eat it or throw it away is inhumane and cruel and unusual punishment. What kind of options are those? Get sick or starve?

Dkt. 9 at 31. The informal grievance includes additional complaints regarding the amount and quality of food provided. *Id.* It does not state that Mr. Miller ever became sick after eating from

4

unsanitary trays, and it does not provide any specific dates when Mr. Miller received unsanitary trays. *Id.* Mr. Miller states that Mr. Ellis responded and told him that meal trays are sanitized and inspected daily, dkt. 48-2 at 28:25–29:5, but no party has presented a copy of this response.

Mr. Miller ate from a dirty tray on March 10, 2019, and vomited soon thereafter. Dkt. 9 at 12. Afterward, Mr. Miller showed the tray to Correctional Officer Stephens and Sergeant Bugsby. *Id.* at 20; dkt. 48-2 at 12:24–13:4. Sergeant Bugsby said he would e-mail Lieutenant Nicholson about the situation, but it is not clear whether he ever did so. Dkt. 48-2 at 27:22–28:4.

Mr. Miller filed a formal grievance on March 11, 2019, presenting his concerns about unsanitary meal trays generally and the March 10 incident specifically. Dkt. 9 at 4. The grievance specialist returned the grievance to Mr. Miller with a note that he did not properly attempt to resolve his complaint informally before filing a formal grievance. *Id.* at 3. None of the other grievances Mr. Miller has placed in the record refer to his experiences with meal trays.

The record does not include any evidence of Mr. Miller becoming sick from a meal tray after March 10, 2019. He states that he wrote to Warden Brown, Lieutenant Nicholson, Sergeant Cobb, and Sergeant Drada regarding meal trays, but they did not respond. Dkt. 48-2 at 14:11–24, 18:11–19, 20:17–19, 21:2–10, 22:23–23:14, 23:17– 24:1, 28:5–8. There is no evidence that Mr. Miller sent these communications to the defendants before the March 10 incident. He further alleges that Lieutenant Nicholson did not pass informal grievances to the other defendants, *see id.* at 19:13–21, 22:25–23:7, but no evidence indicates Lieutenant Nicholson received informal grievances before the March 10 incident.

The record includes numerous grievances and letters unrelated to Mr. Miller's meal trays. *See* dkt. 30 at 5–11, 14–19, 21. These documents concern the staff's failure to respond to informal grievances and the confiscation of Mr. Miller's legal materials.

5

Mr. Miller believes that the sergeants in his housing unit inspected meal trays before they were passed to inmates, but he has no evidence that any of the defendants ever inspected his meal tray. Dkt. 48-2 at 24:2–25:16.

### B. The Eighth Amendment

The Eighth Amendment obligates prison officials to provide humane conditions of confinement, meaning they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim, a plaintiff must show that the "conditions of his confinement resulted in the denial of the minimal civilized measure of life's necessities, and that the defendants were deliberately indifferent to the conditions in which he was held." *Gruenberg v. Gempeler*, 697 F.3d 573, 579 (7th Cir. 2012) (internal quotations omitted). "'Deliberate indifference,' in turn, means that the [defendant] knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "[T]he inmate must show that the [defendant] received information from which the inference could be drawn that a substantial risk existed, and that the [defendant] actually drew the inference." *Id.*

"Only someone personally responsible in a constitutional violation"—of the Eighth Amendment or any other provision—"can be held liable under [42 U.S.C.] § 1983." *Wojcik v. Cook Cnty.*, 803 F. App'x 25, 27 (7th Cir. 2020) (citing *Wilson v. Warren Cnty., Ill.*, 830 F.3d 464, 469 (7th Cir. 2016)). "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018); *see also Lennon v. City of Carmel, Indiana*, 865 F.3d 503, 507–508 (7th Cir. 2017) ("[T]he

plaintiffs fail to allege that any of the defendants named in their suit were personally involved in the stops. With respect to the individual defendants, this is a fatal flaw because there is no vicarious liability in a suit under section 1983."). Thus, individual liability for damages under § 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted).

**C.     Analysis**

The evidence discussed above would not allow a reasonable jury to award Mr. Miller damages, even when viewed in the light most favorable to him as the non-movant. No evidence supports an inference that any defendant was personally responsible for Mr. Miller receiving a dirty meal tray or knew he was receiving dirty trays but failed to respond reasonably.

No evidence indicates that any defendant's *actions* caused Mr. Miller to eat from a dirty tray. No defendant handed Mr. Miller a dirty meal tray, and no evidence supports the conclusion that any defendant inspected Mr. Miller's meal tray, observed that it was dirty, and directed that it be served to him anyway.

Similarly, no evidence suggests that Mr. Miller ate from a dirty tray as a result of any defendant's *inaction*—that is, due to deliberate indifference. A defendant could have been deliberately indifferent only if he received information supporting the inference that Mr. Miller faced a substantial risk of receiving dirty meal trays. *Townsend*, 522 F.3d at 773. The record documents that Mr. Miller informed only two defendants—Mr. Ellis and Sergeant Bugsby—that he received dirty meal trays. Dkt. 9 at 20, 31; dkt. 48-2 at 12:24–13:4.

Mr. Miller did not inform Sergeant Bugsby until *after* he became sick on March 10, 2019. Dkt. 48-2 at 12:24–13:4. Mr. Miller states generally that he received dirty meal trays and became sick over a period of about six weeks extending into late March. *Id.* at 15:21–16:4, 32:15–21.

7

However, he has not provided any testimony or documents identifying an incident in which he became sick from a dirty tray after March 10. According to the evidence presented, Sergeant Bugsby could not have caused Mr. Miller to become sick through deliberate indifference because he did not know about the dirty meal trays until after the last time Mr. Miller became sick from a dirty meal tray.

Mr. Miller wrote an informal grievance to Mr. Ellis that is dated March 7, 2019. Dkt. 9 at 31. But no evidence confirms that Mr. Ellis received that informal grievance before March 10. Mr. Miller testified in his deposition that he received a response from Mr. Ellis, dkt. 48-2 at 28:25–29:5, but the response itself is not in the record, and no evidence sheds any light on when Mr. Ellis may have received the informal grievance. Accordingly, no jury could find that Mr. Ellis was deliberately indifferent to the risk presented by dirty meal trays.

At the end of the day, no evidence shows that any of the defendants was personally responsible—by action or inaction—for the fact that Mr. Miller received meals on dirty trays. *Wojcik*, 803 F. App'x at 27. If anything, the evidence supports a conclusion that he told the defendants about his problem after the fact and that they did not respond. Unfortunately, not even those facts would support an Eighth Amendment claim. *See e.g.*, *McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013) ("McGee's claims against . . . the individuals who ruled against McGee on the institutional grievances he filed . . . fail as a matter of law . . . ."); *George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

8

## V. Conclusion

Mr. Miller's motion for summary judgment, dkt. [35], is **denied** for the reasons set forth in Part III. The defendants' unopposed motion for summary judgment, dkt. [48] is **granted** for the reasons discussed in Part IV. This action is **dismissed with prejudice**. The **clerk is directed** to enter final judgment consistent with this Order and the screening Entry at dkt. 5.

**IT IS SO ORDERED.**

Date: 8/28/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

XAVIER M. MILLER
201448
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Brandon Alan Skates
INDIANA ATTORNEY GENERAL
brandon.skates@atg.in.gov